## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRENT WESTBROOK,
an individual,

       Case No.:

      Plaintiff,

v.

CAPITAL ONE BANK (USA), N.A.,
a national association,
POLLACK AND ROSEN, P.A.,
a Florida profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, BRENT WESTBROOK (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, CAPITAL ONE BANK (USA), N.A. (hereinafter, "Capital One"), POLLACK AND ROSEN, P.A. (hereinafter, "Pollack & Rosen"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

1

## PRELIMINARY STATEMENT

1.      This is an action brought by an individual consumer for damages for Capital One's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Capital One improperly attempted to credit-report and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and TransUnion that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff repeatedly advising Capital One that he did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed Capital One's reporting of such erroneous information directly to Equifax, Experian, and TransUnion— Capital One *continued* to demand payment from Plaintiff on the alleged debt, even suing Plaintiff in an attempt to collect the invalid debt, and continued to report this fraudulent account with a significant balance due and past-due.

2.      Furthermore, this is an action for damages for Equifax's, Experian's, and TransUnion's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the alleged Capital One account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Equifax, Experian, and Trans Union including sworn

statements.

3.    Additionally, this is an action for damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 *et seq.* (hereinafter "FDCPA") against Pollack & Rosen wherein they filed a lawsuit against the Plaintiff in an attempt to collect a debt that Plaintiff does not owe.

## JURISDICTION, VENUE & PARTIES

4.    Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq., and pursuant to the FDCPA, 15 United Stats Code Section 1692 et seq.

5.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.    Venue is proper in this District as the acts and transactions described herein occur in this District.

7.    At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

8.    At all material times herein, Capital One is a national association with its principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

9.    At all material times herein, Pollack & Rosen is a Florida profit corporation with its principal place of business located at 806 Douglas Road South Tower, Suite 200, Coral Gables, FL 33134, that, itself and through its subsidiaries, regularly collects debts from consumers in Pinellas County, Florida.

10.    At all material times herein, Pollack & Rosen uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts.

11.    At all material times herein, Pollack & Rosen regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12.    At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

13.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

14.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

15.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

16.    Under the FCRA, whenever a consumer reporting agency prepares a

consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

17.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

18.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

19.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

20.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed

5

information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

21.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

22.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FDCPA STATUTORY STRUCTURE

23.    The FDCPA is a federal statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C. §§ 1692(a) and (e).

24.    The FDCPA imposes civil liability on any debt collector who "uses any

6

instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6).

25.  Specifically, the FDCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*."  15 U.S.C. § 1692(a)(2). (emphasis added).

## GENERAL ALLEGATIONS

26.  At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FDCPA, Section 1692(a) because he is an individual and allegedly obligated to pay a debt.

27.  At all material times herein, Capital One, itself and through its subsidiaries, regularly extends credit cards—and credit reports debts associated with the same—allegedly owed by consumers residing in Pinellas County, Florida.

28.  At all material times herein, Capital One reports information concerning an alleged consumer credit card account that was opened as a result of identity theft and fraud, referenced by account number beginning 414709767495- (hereinafter, the "Alleged Debt" or the "Account").

29.  At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff

did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

30.    At all material times herein, Capital One, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a credit card, on which Capital One assessed finance charges.

31.    At all material times herein, Capital One is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

32.    At all material times herein, Capital One is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

33.    At all material times herein, Pollack and Rosen's conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by the FDCPA.

34.    At all material times herein, Capital One furnishes information to Equifax, Experian, and Trans Union regarding the Account and the corresponding Alleged Debt referenced by account number beginning in 414709767495- (hereinafter, the "Account").

35.    At all material times herein, Capital One furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans

8

or complete denial of credit.

36.     At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

37.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

38.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

39.     During or before April, 2019, a Capital One credit card account was allegedly opened in Plaintiff's name (the "Account").

40.     To the extent the Account was opened by an individual or entity, such individual or entity opened the Account without Plaintiff's consent, knowledge, or approval.

41.     Furthermore, Plaintiff had never owned nor opened an account of any type with Capital One.

42.     Plaintiff did not receive billing statements at his address from Capital One regarding the Account.

43.     To the extent that charges were made on the Account after its inception resulting in an alleged balance due (i.e., the Alleged Debt), Plaintiff did not make any such charges himself, Plaintiff did not authorize any other individual or entity to make charges for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of charges made on the Account.

44.     During 2022, Capital One filed a collections suit in the County Court of The Sixth Judicial Circuit, in and for Pinellas County, Florida, County Civil Division, Case No. 22-000117-CO, through its counsel Pollack & Rosen against Plaintiff seeking payment on a debt in excess of $16,000.00 (hereinafter, "Collections Suit").

**45.**     In its discovery responses, Capital One included billing statements from May 2019 to June 2019, listing purchases made in Miami, Florida on May 11, 2019. Please see attached a true and correct copy of the Capital One monthly account statement for the Account for May 2019 labeled as **Exhibit "A."**

**46.**     Importantly, on May 11, 2019, at the time these purchases were made, Plaintiff—a Pinellas County, Florida resident—was physically located in the Savannah, Georgia area for business purposes, where he made multiple purchases on his USAA credit card. Please also see attached a true and correct copy of Plaintiff's monthly account statement for his USAA Account for May 2019 labeled as **Exhibit "B."**

47.     Although Plaintiff was physically located in Savannah, Georgia on May 11, 2019 the unknown third-party made *at least* four (4) fraudulent charges at locations

in Miami, Florida.  *See* **Ex. A**. at p. 4.

48.    Plaintiff did not and could not have made the four (4) charges on May 11, 2019, in Miami, Florida because he was physically located in Savannah, Georgia on the dates of such charges.

49.    Further use of the fraudulent account was made by the unidentified party, resulting in a $16,780.25 total on the Account.

50.    Prior to filing the Collections Suit, Pollack & Rosen did not contact Plaintiff to determine the legitimacy of the Account.

51.    Prior to filing the Collections Suit, Pollack Rosen only reviewed the billing statements sent by Capital One to an address not belonging to Plaintiff for the purpose of determining the monetary amount to demand in the Collections Suit.

52.    Capital One's and Rosen & Pollack's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under federal law.

53.    Given Capital One's and Pollack & Rosen's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

54.    Plaintiff needs and is entitled to injunctive relief with respect to Capital One's and Pollack & Rosen's debt collection communications in violation of the FDCPA.

55.    Capital One's and Pollack & Rosen's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to

believe that despite not owing the Alleged Debt personally, Plaintiff had no choice but to pay the Alleged Debt or continue to endure Capital One's and Pollack & Rosen's unlawful debt collection practices.

## DEFENDANTS' CREDIT REPORTING OF THE ACCOUNT AND PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA

56.    During or around July 2022, Plaintiff obtained copies of his consumer disclosure reports from Equifax, Experian, and Trans Union.

57.    Despite never personally opening the Account nor authorizing anyone to open the Account on his behalf, Capital One, Equifax, Experian, and Trans Union reported the Capital One credit card account (i.e., the Account) as owed by Plaintiff personally with a balance due in the amount of $16,780.00 and a $16,780.00 balance past-due as of July 2022.

58.    Defendants' reporting of the Account with a balance due or past-due in excess of $0.00 as of July 2022 is inaccurate because any alleged balance owed was the result of identity theft and fraud.

59.    Additionally, Capital One, Equifax, Experian, and Trans Union reported the Account with a date of last payment of May 1, 2019, and with a date opened of February 7, 2019. *Id.*

60.    To be clear, Plaintiff never opened the Account and did not make any payments on the Account.

61.    Defendants' reporting of historical or current late payment information is similarly inaccurate because any alleged balance owed was the result of identity theft

and fraud, and therefore, Plaintiff could not be late or past-due on a balance he does not owe.

62. On or about July 25, 2022, Plaintiff sent letters, with the assistance of his attorneys, to Equifax, Experian, and Trans Union, disputing Defendants' ongoing reporting of the Capital One Account with a balance owed and as belonging to Plaintiff (hereinafter, "First Dispute"). Please see attached true and correct copies of the First Dispute letter labeled as **Exhibit "C."**

63. More specifically, Plaintiff's First Dispute advised Equifax, Experian, and Trans Union that the Capital One Account did not belong to Plaintiff and requested that Defendants delete the Account from his credit reports and credit files.

64. Equifax received Plaintiff's First Dispute.

65. Equifax communicated Plaintiff's First Dispute to Capital One.

66. Capital One received notice of Plaintiff's First Dispute via Equifax.

67. In response to Plaintiff's First Dispute, Equifax purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Equifax with a balance due and past due in excess of $16,000.00 and with a status of charged off.

68. Experian received Plaintiff's First Dispute.

69. Experian communicated Plaintiff's First Dispute to Capital One.

70. Capital One received notice of Plaintiff's First Dispute via Experian.

71. In response to Plaintiff's First Dispute, Experian purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file

as maintained by Experian with a balance due and past due in excess of $16,000.00 and with a status of charged off.

72.    Trans Union received Plaintiff's First Dispute.

73.    Trans Union communicated Plaintiff's First Dispute to Capital One.

74.    Capital One received notice of Plaintiff's First Dispute via Trans Union.

75.    In response to Plaintiff's First Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due and past due in excess of $16,000.00 and with a status of charged off.

**76.**    On or about August 22, 2022, Plaintiff sent a second letter, with the assistance of his attorneys, to Equifax, Experian, and Trans Union, *again* disputing Defendants' reporting of the Account (hereinafter, "Second Dispute").  Plaintiff enclosed copies of Plaintiff's FTC Identity Theft Report in support of his Second Dispute.  Please see attached true and correct copies of the Second Dispute and its enclosures labeled as **Composite Exhibit "D"**.

77.    Specifically, Plaintiff's Second Dispute advised Equifax, Experian, and Trans Union that the Account balance was a result of identity theft and fraud, directed Defendants to the identity theft report Plaintiff filed, and requested that Defendants delete the Account from Plaintiff's credit reports and credit files.

78.    Equifax received Plaintiff's Second Dispute.

79.    Equifax failed to respond to Plaintiff's Second Dispute.

80.    Experian received Plaintiff's Second Dispute.

81.   Experian communicated Plaintiff's Second Dispute to Capital One.

82.   Capital One received notice of Plaintiff's Second Dispute via Experian.

83.   In response to Plaintiff's Second Dispute, Experian did not even respond to Plaintiff, but instead addressed him incorrectly by "Brent Westwood" when Plaintiff's name is "Brent Westbrook."

84.   Experian continued to report the Account on Plaintiff's credit report and credit file as maintained by Experian with a balance due and past due in excess of $16,000.00 and with a status of charged off.

85.   Trans Union received Plaintiff's Second Dispute.

86.   Trans Union communicated Plaintiff's Second Dispute to Capital One.

87.   Capital One received notice of Plaintiff's Second Dispute via Trans Union.

88.   In response to Plaintiff's Second Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due and past due in excess of $16,000.00 and with a status of charged off.

89.   On or about June 28, 2022, Plaintiff sent a third letter, with the assistance of his attorneys, to Equifax, Experian, and Trans Union *again* disputing Defendants' reporting of the Capital One credit card account (hereinafter, "Third Dispute"). Plaintiff stated that not only had he not personally opened the Account in question nor authorized the Account to be opened, but that he had never obtained an account with Capital One in his lifetime. Please see attached true and correct copies of the Third

Dispute and its enclosures labeled as **Composite Exhibit "E."**

90.     Also, in support of his Third Dispute, Plaintiff advised Defendants that in the course of discovery during the Collections Suit, Capital One had produced a billing statement with charges occurring on May 11, 2019, in Miami, Florida at the same time when Plaintiff was physically located in Savannah, Georgia for business purposes, corroborated by Plaintiff's USAA credit card statement.

91.     Plaintiff's Third Dispute requested that Defendants delete the Account from Plaintiff's credit reports and credit files.

92.     Equifax received Plaintiff's Third Dispute.

93.     Equifax failed to respond to Plaintiff in response to Plaintiff's Third Dispute, claiming that the information on file for Plaintiff did not match the information provided by the Third Dispute.

94.     Experian received Plaintiff's Third Dispute.

95.     Experian communicated Plaintiff's Third Dispute to Capital One.

96.     Capital One received notice of Plaintiff's Third Dispute via Experian.

97.     In response to Plaintiff's Third Dispute, Experian claimed that it did not appear that the dispute was initiated by Plaintiff and claimed they were unable to conduct an investigation.

98.     Trans Union received Plaintiff's Third Dispute.

99.     Trans Union communicated Plaintiff's Third Dispute to Capital One.

100.    Capital One received notice of Plaintiff's Third Dispute via Trans Union.

101.    In response to Plaintiff's Third Dispute, Trans Union purportedly

verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due and past due in excess of $16,000.00 and with a status of charged off.

102.    On or about February 21, 2023, Plaintiff called Equifax, Experian, and Trans Union respectively, disputing Defendants' reporting of the Capital One credit card account (hereinafter, "Fourth Dispute").  Plaintiff again stated that not only had he not personally opened the Account in question nor authorized the Account to be opened, but that he had never obtained an account with Capital One in his lifetime.

103.    As of the date of this Complaint, Equifax, Experian, and Capital One continue to report the Capital One Account on Plaintiff's credit reports and in Plaintiff's credit files as a negative, derogatory, and adverse account with a significant—and inaccurate—balance past-due.

## DAMAGES

104.    As a result of Defendants' reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Capital One if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

105.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting

of the Account with a balance past-due, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

106.   Most importantly, Plaintiff was unable to obtain financing for his fiancé's engagement ring and instead had to turn to family to lend him the money to purchase the ring.

107.   Plaintiff was unable to be a co-signor to the couple's home mortgage due to his adverse and erroneous credit history.

108.   Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

109.   Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he did not initiate or authorize the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account and Capital One's ongoing attempts to collect the Alleged Debt.

### COUNT ONE:
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>
### (As to Capital One Only)

Plaintiff re-alleges paragraphs one (1) through one hundred and nine (109) as if fully restated herein and further states as follows:

110.    Capital One is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian, Equifax, and TransUnion delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

111.    As described above,  Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff does not have any active or closed credit accounts with Capital One; (ii) Plaintiff did not personally apply for the Account or open the Account; (iii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iv) Plaintiff possessed no knowledge of the Account that was alleged opened in 2019 until Capital One brought a collections suit against him in 2022; (v) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (vii) Plaintiff completed an FTC Identity Theft Report.

112.    Despite Plaintiff not being responsible for the Alleged Debt, and despite Capital One receiving notice of Plaintiff's disputes from Plaintiff, Experian, Equifax, and TransUnion—including the information and documents referenced in the above paragraph— Capital One willfully and/or negligently failed to request that Experian, Equifax, and TransUnion delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and

TransUnion including significant balances due, as significantly past-due, and as charged off

113.   Between July 2022 and February 2023, Plaintiff repeatedly disputed Capital One's reporting of the Account to Equifax, Experian, and Trans Union, and the credit reporting agencies forwarded Plaintiff's disputes to Capital One.

114.   In total, Capital One received *at least* nine (9) disputes from Equifax, Experian, and Trans Union regarding its reporting of the Account.

115.   The documents Plaintiff enclosed in support of his disputes included an FTC Identity Theft Report and conflicting billing statements from Capital One and USAA proving that Plaintiff was physically located in Savannah, Georgia at the time of several of the fraudulent purchases.

116.   In response to Plaintiff's disputes, despite Capital One receiving notice of Plaintiff's disputes from Equifax, Experian, and TransUnion—including the information and documents referenced in the above paragraph— Capital One failed to request that Equifax, Experian, and Trans Union delete the Account from Plaintiff's credit reports and credit files.

117.   Instead, Capital One purportedly verified and/or updated its reporting of the Account including significant balances due, as significantly past-due, and as eventually as charged off.

118.   Capital One's refusal to request that Equifax, Experian, and Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Capital One clearly possessed knowledge that the Alleged Debt

was a result of identity theft and fraud.

119.   Capital One's re-investigations were not conducted in good faith.

120.   Capital One's re-investigations were not conducted reasonably.

121.   Capital One's re-investigations were not conducted using all information and documents reasonably available to Capital One.

122.   As a result of Capital One's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

123.   Most importantly, Plaintiff was unable to obtain financing for his fiancé's engagement ring and instead had to turn to family to lend him the money to purchase the ring.

124.    Plaintiff was unable to be a co-signor to the couple's home mortgage due to his adverse and erroneous credit history.

125.   Capital One's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

126.   Capital One's actions in violation of 15 United States Code, Section

1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred and nine (109) as if fully restated herein and further states as follows:

127.   Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

128.   Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Capital One Account.

129.   Specifically, despite Plaintiff *repeatedly* advising Equifax, Experian, and Trans Union that Plaintiff did not open the Account, did not authorize any other person to open the Account in his name or on his behalf, did not make any charges on the Account, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the

Account was opened as a result of identity theft and fraud—Experian, Equifax, and TransUnion each continued to report the Account with a balance due, with a balance past-due, and as charged off resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

130.    Further, Experian, Equifax, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Experian, Equifax, and TransUnion credit reports and credit files.

131.    For example, despite Plaintiff's repeated disputes including the identity theft report information and credit card statements of his legitimate accounts proving he was in the same location as the charges made on the Account during certain periods in support of his ongoing dispute, neither Equifax nor Experian nor Trans Union deleted the Account from Plaintiff's credit reports and credit files in response to any of Plaintiff's disputes, Experian and Equifax both failed to respond to Plaintiff's Second and Third Disputes, and none requested documents from Capital One in support of Capital One's reporting of the Account.

132.    Despite Plaintiff notifying Equifax, Experian, and Trans Union of their reporting errors and providing documents in support of his disputes, Equifax, Experian, and Trans Union each continued to report the Account with a balance due, balance past-due, and charged off, and each subsequently published Plaintiff's credit reports to Plaintiff current creditors and/or potential future creditors including the

inaccurately reported Account.

133.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

134.    Furthermore, due to the erroneous and derogatory reporting of the Account on Plaintiff's credit reports, Plaintiff was unable to obtain financing for his fiancé's engagement ring and had to turn to family loans to purchase the ring.

135.    Plaintiff was also unable to be a signatory party on his home mortgage because of the adverse reporting of the Account and the impact it caused to Plaintiff's credit worthiness.

136.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

137.    Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code,

Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.***
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred and nine (109) as if fully restated herein and further states as follows:

138.    Experian, Equifax, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

139.    Specifically, Equifax, Experian, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

140.    Overall, Plaintiff's First Dispute, Second Dispute, and Third Dispute provided Equifax, Experian, and Trans Union with sufficient information and supporting documentation allowing Equifax, Experian, and Trans Union to identify that the alleged balance owed on the Account was created as a result of identity theft

and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

141.    For example, despite Plaintiff's repeated disputes including the identity theft report information and credit card statements of his legitimate accounts proving he was in the same location as the charges made on the Account during certain periods in support of his ongoing dispute, neither Equifax nor Experian nor Trans Union deleted the Account from Plaintiff's credit reports and credit files in response to any of Plaintiff's disputes, Experian and Equifax both failed to respond to Plaintiff's Second and Third Disputes, and none requested documents from Capital One in support of Capital One's reporting of the Account.

142.    Following Plaintiff's First Dispute and Second Dispute, Equifax, Experian, and Trans Union continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

143.    Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in his name, and did not benefit from the Account in any way, and given that Equifax, Experian, and Trans Union did not request any documents from Capital One supporting Capital One's reporting of the Account, Equifax, Experian, and TransUnion could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

144.    Experian, Equifax, and Trans Union each continued to inaccurately report the Account with derogatory, late payment information, as charged-off, and

with a significant balance past-due following Plaintiff's Third Dispute, causing the Account to be reported as a derogatory, negative, or adverse account.

145.    As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

146.    Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

147.    Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

148.    Equifax's, Experian's, and Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by Capital One.

149.    Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

150.    Equifax's, Experian's, and Trans Union's reinvestigation procedures are unreasonable.

151.    Equifax's, Experian's, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax, Experian, and Trans Union.

152.    Equifax's, Experian's, and TransUnion's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was

done in bad faith.

153.    Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

154.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, were deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

155.    Furthermore, due to the erroneous and derogatory reporting of the Account on Plaintiff's credit reports, Plaintiff was unable to obtain financing for his fiancé's engagement ring and had to turn to family loans to purchase the ring.

156.    Plaintiff was also unable to be a signatory party on his home mortgage because of the adverse reporting of the Account and the impact it caused to Plaintiff's credit worthiness.

157.    Equifax's, Experian's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

158.    Equifax's, Experian's, and TransUnion's actions in violation of 15

United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e and 1692f**
**(As to Pollack & Rosen)**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

159.    Pollack & Rosen is subject to, and violated the provisions of, United States Code, Sections 1692e and 1692f by using false, deceptive, and misleading representations in connection with attempting to collect the Alleged Debt, and by using unfair and unconscionable means to collect the Alleged Debt.

160.    More specifically, during 2022, Pollack & Rosen knowingly filed the Collections Suit in an attempt to collect the Alleged Debt and obtain a judgment of at least $16,780.00 when Plaintiff in fact owed $0.00.

161.    Despite Plaintiff never opening the Account creating the Alleged Debt, never authorizing another person to create the Alleged Debt, and the visible indications of Plaintiff's inability to create the Alleged Debt on such dates such as May 11, 2019 as proven by his own credit card statements proving he was out of state at the time of many purchases creating the Alleged Debt, Defendant nevertheless filed the Collections Suit in order to collect the Alleged Debt.

162.    During the course of its attempt to collect the Alleged Debt, Pollack & Rosen knowingly and falsely asserted the Alleged Debt as legitimate and falsely asserted that Pollack & Rosen possessed the right to collect the Alleged Debt from Plaintiff.

163.    Accordingly, Pollack & Rosen violated 15 United States Code, Sections 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1).

164.    As a direct and proximate result of Pollack & Rosen's actions, Plaintiff sustained damages as defined by United States Code, Section 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment declaring that Pollack & Rosen violated the FDCPA;

b.    Judgment enjoining Pollack & Rosen from engaging in further conduct in violation of the FDCPA;

c.    Judgment against Pollack & Rosen for maximum statutory damages under the FDCPA;

d.    Judgment against Capital One, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

e.    Actual damages in an amount to be determined at trial;

f.    Compensatory damages in an amount to be determined at trial;

g.    Punitive damages in an amount to be determined at trial;

h.    An award of attorney's fees and costs; and

i.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*

Jon P. Dubbeld, Esq., FBN 105869
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*